I stand corrected, Your Honor, long already. Let me ask you where this case has been. It's been in abeyance for 11 months. What's been happening? Well, in the meantime, there have been a certain number of claims processed under Policy 495. It is not in the record before the Court, but I can represent that the overwhelming majority of those were processed under the streamlined proceedings of Paragraph 6 of Policy 495, which is a simplified method of just smoothing expenses but not touching the revenues, which is the crux of our appeal today. There have been some private settlements. In the meantime, there are still a large number of cases outstanding. By the last Claims Administrator's Report, there were approximately 17,600 BEL claims still waiting in the queue. What do you want us to do, go back to the old method of just applying the regular non-exceptional AVM? Your Honor, I think that we have three positions in order of fallback. And our first position is that the remand instruction from this Court in Deepwater Horizon I instructed the district court to find parole evidence on what the parties actually meant in their negotiations with regard to the terms corresponding variable as applied to the word expenses or costs in Section 4C. As I understand, AVM lets the expenses follow the revenue. Is that right? Yes. What AVM does is the annual variable examination. What that does is it effectively smooths the expenses and the costs over the entire year but doesn't attempt to move revenues in any particular way. And that would be our fallback position. That's not your first choice. Our first choice is just to go back to the policy as the parties negotiated it in the settlement agreement. The settlement agreement, we think, is quite clear. This part the Court has never had an issue with in 4C that the words corresponding and variable apply only to expenses and to costs and never to revenue. And so there's no basis at all for that. settlement negotiations for the alteration of expenses and costs. And we would say in violation of Section 4D of the settlement agreement, which talks about fixed costs as opposed to variable costs, all that gets washed out by any adjustment under 495. So our ---- You have a problem with AVM. Your problem is, as I get it, revenue shouldn't be reallocated. That's our baseline. AVM doesn't reallocate. That's correct. I understand the four specialized, that there's a lot of reallocation there. Right. But I'm not sure why AVM isn't the first fallback, I guess. Because the AVM also does more adjustments of expenses and costs than the settlement called for. But, Your Honor, that's ---- I'm just giving the entire spread. We would be ---- But your main beef is with these four specialized industry. The four specialized industry are an accentuated form of what's the matter with Policy 495. First of all, it's not grounded in the language of the agreement at all. Second, it is not objective, transparent, data-driven in the way that was represented to the class as the hallmark of this settlement. And it is completely unpredictable. It introduces the subjectivity of accountancy in a way that can't be known ex ante, that makes ---- in effect makes a mockery of the notice given to the class in this case and might raise all sorts of questions about whether the notice was adequate, whether people were informed what they were doing when they were giving up their rights to proceed against BP individually. Those four are extraordinary. And in particular, if one looks at the expert submission of BP by Dr. Dietrich, you can see that when he describes the four methodologies, the four specialized methodologies, he says that that's the accurate way to restate the entire financials of the groups that are under consideration there. To our view, that's exactly what this settlement was not supposed to do. The representations at the time was that records kept in the ordinary course of business would be the basis of claims made and would also be the basis of the actual determination of compensation. So that's our core position on this. Plus, let me make one other point about this. At the time of settlement, there was a big issue that what was advantageous here as compared to the Gulf Coast Claims Facility was that claimants could pick one set of months for eligibility and a different set of months for the compensation. What these methodologies do by the straight-line accounting that they're going to be used in agriculture, the crop season, in education, the tuition year, in construction by the length of the project, professional services, I have to confess, I just don't understand what Policy 495 says on professional services. But on all of these, it's straight-line, which means you don't get the benefit of the bargain. You don't get to pick the advantageous months because all months are identical. That's the nature of straight-line accounting. So it violates one of the core premises of the settlement agreement. But all the months wouldn't be identical. That's why there's the smoothing. If we applied farming, every month would be identical in the crop season. That means that there would be no advantage to a claimant of picking September through November as opposed to June through August or anything of that sort. That benefit would be taken away. And that was something that BP made a big deal about in their submissions to the district court that was one of the frequently asked questions that went out with the notice originally, and that would be worthless under our view. So the question is where does this come from? And the district court on remand found that there was no parole evidence that helped elucidate this. And we submit to you that the court drew the wrong legal conclusion from this. The reason there was no parole evidence is for such a dramatic recasting of the way businesses maintain the financial records, the representations made to the class, the criticisms that were made of the GCCF for being too subjective. This would have required extensive negotiation, extensive discussion, if there were ever to be any proposal that would force all small businesses to transform their books into what's effectively a cruel accounting. We suggest that this is a case where the dog really did not bark, that had this been a subject of negotiation, it would have been all over the record. The fact that there is nothing there indicates that this was not before the parties at the time. We have in the record the statement from Mr. Godfrey, counsel for BP, when this case was remanded from the BEL court. And at the time he told the district court, it is BP's position that there is no requirement of a cruel accounting as a condition of either eligibility or compensation under the settlement. If one looks at the brief filed by BP in this matter, by my count, 52 times they invoke a cruel accounting as the mechanism that has to be used. Their prayer for relief at the very end of the brief is for an order compelling a cruel accounting on all small businesses. If there is to be any closure to this case, we have to go back, we suggest, to simple, objective, transparent determinations. If every one of the remaining 17,600 businesses is going to have their earnings restated by a process of accountancy that is completely unknown, not transparent, we will get appeal after appeal after appeal to this court because this is not what the parties bargained for. They will legitimately claim that they are entitled to something different under the terms here. Isn't the AVM consistent with a cruel accounting? I mean, without the exceptions where you move revenue, but just the basic AVM, isn't that consistent with recognized a cruel accounting? My understanding, Your Honor, is that it is a step that is consistent with it, but it is not a cruel accounting. What is a cruel accounting is basically, for us who are not accountants, is basically smoothing all the processes over the course of the period in which the economic activity took place. In fact, you have to do very substantial investigation of the nature of the activities in question. What the AVM does is it only smooths the expenses and costs. I thought that was what a cruel accounting did. No, I think it also smooths the revenues because if you look, for example, at the four specialty frameworks, which are full of cruel accounting style applications, what you see there is that they take all the revenues, they examine the economic activity over a longer period of time, whether it's the planting to harvest in agriculture or whether it's the entire academic year in educational institutions, and they smooth the revenue over that period as well, and then they use those two against each other. See, I thought you were arguing that smoothing the revenue was not recognized by GAAP. Well, smoothing the revenue may be recognized by GAAP under certain circumstances, but under the industries in particular that are dealt with here, there is no smoothing when there's uncertainty about the economic returns at the time of the original activity. That's gibberish to me. Your Honor, I don't stand here to defend the accounting profession. I'm learning this stuff also as we go along. But our position on this is that whatever the definitions under GAAP might be, whatever the definitions might be under any accounting protocols, and of course we have experts who say all kinds of things on both sides here, what's clear is that this was not the deal. This was not what was negotiated. The representations at the time were that you could take your financial records in the ordinary course of business. The law privileges ordinary course of business as a matter of the Federal rules of evidence, as a matter of presumptions in the tax code, and we were building on that and saying that would be the basis for your eligibility and your compensation, and what's more, you've got to mix and match, because we wanted to give preferences to the claims of the class members. But didn't the parties agree that GAAP standards would not control? That's correct. So your argument that the variable expenses shouldn't be smooth, how can you not smooth them if they come in at an entirely different time than the revenues? Well, Your Honor, that's the way cash accounting works. You just do it when it comes in, and you book it by the month. You have your profit and loss statements by the month, and it is a more primitive form of accounting. They don't always match. They probably usually don't match. That may very well be, Your Honor, but the key point is that everybody knew this. It was not at the time we were negotiating this. It is not a surprise that we just learned in the application of the settlement that there is both a planting season and a harvesting season in agriculture. This has been well known for a very long time. It's been four and a half years, right? Yes. So what's been going on? Why are you just here now? This is my tenth time here, so it's not like I haven't been here. You're raising this issue like it's, oh, my God. No, we raised this issue right from the beginning, and what happened, Your Honor, is that for the first six months or so, this was being paid in this fashion, and it was being paid prior to class settlement final approval because the settlement was implemented prior to the approval. And, in fact, if you go back to the GCCF on the determination of what your income and so forth was prior to the Deepwater Horizon disaster, it was based upon records kept in the ordinary course of business. This is a new construct that was superimposed on the settlement in response to this Court's opinion in Deepwater Horizon 1. Okay. Well, that's six months' worth, but then we have the other four years. I mean, is Policy 495 something you've just decided? Oh, no. We took the appeal, but realistically, we pushed back the appeal to see what the application would be. That's not in the record anywhere, but we waited to see what the application was. It turned out that for most of the cases in 490, under 495 review, as I said to Judge the AVM methodology didn't require extraordinary efforts, and those have been resolved. Now we're at the cases that could not be resolved under that methodology, Your Honor. If I could say one word about Deepwater Horizon 1. Be nice. What? Your Honor, I will be. I think that Deepwater Horizon 1, even back then, this Court recognized what was the anomaly in this case, if you will, and the anomaly is that cash businesses rise and fall all over the place, and that if you took the claims of BP seriously, that economic reality meant that you had to rewrite and everything, you would unwind the settlement in its broad strokes. And so this Court in Deepwater Horizon 1 unanimously rejected the application of this same kind of methodology to 4B, to the causation issue, and this Court said that even though there is a problem with what this Court termed uneven cash flows, and to quote from this Court, the settlement aim of compensation without any complex analysis of what type of business activities took place within those months is what must prevail. And we submit that that same analysis applies here also on the revenue side, because there is no warrant under the express language of 4C for the smoothing of revenues in a way that would do today, under the claim of accrual accounting, what was rejected in Section 4B four years ago. Let me ask you to respond to opposing counsel's argument that it's unsightly to see claimants get a windfall by simply delaying billing, say, for a crop that they sell or something they produce during the compensation period. What do you say to that? I think it would be unsightly, Your Honor, if people were trying to game the system after the settlement goes into effect. And that's why part of BEL, of the BEL opinion, Deepwater Horizon 1, was to remand precisely to make sure that nobody was restating accrual-based books into cash-based accounting so as to from the settlement. Here, our claim is that everybody should rely on their books as they kept them at the time. Nobody is gaming the system. Everyone is acting in conformity with the representations made. This was known. It was known that crops are booked at different times. It's known that tuition comes in at different times. It was known to the non-profit panel that extraordinary contributions to non-profits don't come in on a smooth, cyclical basis. They come in every so often. And yet, the non-profit panel held that that could be the basis for both the eligibility under 4B and the compensation under 4C. So our argument is nobody is gaming the system here. We're just using our books in the way that they were kept to conform to what was represented. You're saying that it's consistent, the examples that opposing counsel gives in their brief, is just following the system that was agreed to. Following the system that was agreed to, and we have these two jet ski shops, which have now risen to mythical proportions in this case. There are no two jet ski shops anywhere in the record that maintain their books on a different basis. There's not a ‑‑ I would, without knowing at all what I'm speaking about, I would nonetheless submit to the court. But the books should have been completed before the settlement was entered into, right? Everybody knew that, and everybody knows how jet skis, small shops maintain their books. Judge Barbier made a finding about that in the record in this case. He said these are small businesses. They all maintain, all the information we have is that they all maintain their records on a cash basis. This is not new. This was all known during the negotiations. All right, sir. You save five minutes for rebuttal. Thank you very much, Your Honor. Shirley, would you give Mr. Olson five more minutes since we went over? Theodore Olson, Your Honor, on behalf of BP. What I'm hearing is my opponent re-arguing the case that was decided in October of 2013. That is what I hear. This Court remanded to the district court to conduct a factual inquiry to ascertain whether there was any clear evidence to justify for not matching revenue and expenses for cash-based claimants as it did with accrual-based claims. What I got out of that was matching meant match expenses with revenue. I saw nothing about moving revenue. Well, what the first part of that decision says recognition of revenue and expenses. That's part A of that decision. I think it's on page 332. What the court — and you can't separate out the revenue from the expenses when you're attempting to determine whether someone lost money as a result of the spill for a certain period of time. The structure of the settlement agreement was to provide what had happened during the period immediately after the spill according to months selected with the prior period of time. Now, what this Court specifically decided, and it was as clear as it could be, I would think, that matching — when you're matching, you're matching expenses and revenue or revenue and expenses. And the ABM seems to do that. It does. But these four specialized industries say we're going to smooth out the revenues so that if you happen to get a big contingency fee in one month, well, we're going to spread it out over the time of the work. What the court — what the district court did and the claims administrator did was follow the guidance of this Court, which specifically — Well, the entire decision of the case and the way it was briefed and the facts that it were before the court is that everybody compares their — does their accounting records in a slightly different way. You acknowledge that in Deepwater Horizon 1. It isn't all the same. Some — in fact, some of the accrual-based systems you specifically pointed out aren't necessarily exactly the same. And what this — there's those four industry-specific categories. And all that was challenged here and is articulated in the issue presented for review on page Roman 11 of the brief was the existence of those categories. And what those are, Judge Costa, is an attempt to apply the framework that you've described in Deepwater Horizon 1, the accrual-based framework, to certain industries, agriculture, education, and so forth, that keep their books in a certain way. Agriculture, the funds come in when the crops are sold. In education, the money is paid for tuition before the student takes the classes. And it's an effort to do what you described as accounting for where the revenue really was the product of the economic activity that produced the revenue in the first place. So does GAFSA allow moving revenue as opposed to taking expenses and moving expenses? Does GAFSA recognize that? It's not moving the expenses. It's the — Moving revenue. Or moving the revenue. It's not moving anything at all. The records are what they are. There's a lot of documentation that was required. And what it is is attempting to account for that revenue and account for those expenses, to account for the revenue in connection with the economic activity that caused that revenue to exist. And as deducted from that, you would have to deduct the expenses that produced that revenue. In each case, the AVM and these specific categories are an attempt, faithfully, to do that in the context of what you described, because it all comes down to matching. And not smoothing. This is sort of a misleading term and not much of an accounting term. But you pointed out in your first opinion that this concept of matching is based upon the accrual framework. And the accrual framework attempts accurately to depict what period of time produced the activity that caused the revenue to come in and what expenses were necessary to produce that revenue in an accurate way so you could compare period number one with period number two, the two opposing periods. And you specifically. Isn't that inconsistent with the settlement saying that the claimant can pick the months that are going to be good for that claimant? Yes, it is consistent with that. And that particular – But a farmer now, if that was his month when the cash came in or in the later period didn't come in, it's going to get all reallocated anyway. So picking the months doesn't really matter. Well, picking the months does matter because it gave the claimant the opportunity to select the period it was going to compare. You specifically addressed the point about comparable months, and you said you have to compare, and that's Part D, which isn't challenged here in this particular proceeding at all. The claimant gets to pick the comparable months with the same name. BP made the argument that it should be comparable activity during the comparable periods. We lost that. We accept that. The focus is on the revenue. Pardon me? The focus is on the revenue. The focus is on the – the focus – yes, Your Honor. The focus is on the revenue here, but it's specifically your focus in the previous case, too, because when you talk about matching, what are you matching? You can't match something with nothing. It's the whole purpose of the matching is to determine how much revenue was attributable to this period of time versus this period of time when the expenses attributable to producing that revenue. So you have to look at the realities. Pardon me? You have to look at the realities of the expenses. Yes, you do. Against the revenue. So they might not be the same months or it might be a different period of time. And with these other – the four industries that are being complained about, that required more documentation, correct? They may require different documentation. And what the claims administrator was attempting to do is say that agriculture is a different type of a business than running a law firm with contingent fees. And the work is done in a certain way and the income comes in in a certain way, the revenue comes in in a certain way, slightly differently with respect to that industry, the agriculture industry, the education industry, and so forth. So let's create a framework. This is a perfectly sensible, coherent way of attempting to find what you talked about in your earlier opinion. You said that failure to match and to go back to this cash basis system was – you call it incoherent. It produces economic incoherence, inconsistent results, artificially inflated and entirely fictitious losses. Those are your words. But when you attempt to do the process, and accountants are doing this in the way that they best can with respect to different industries and how that accounting and how those records all work out. What you said was if we do it this way, accrual-based accounting, it is amply supported by the language of Exhibit 4C. It's more consistent with general accounting and economic norms. It gives meaning to the words in the agreement, corresponding and variable. And it results in numbers that could fairly represent actual economic activity in the comparative periods. That's what you were – Let me ask you about an example. Let's take a sugar cane farmer who starts his crop in May and works on it, doing various things. And then in December, he harvests and sells his crop. Now, the way I thought accrual accounting worked was you took those costs from May to December and you matched that with what he got for the crop, and then that's his profit. But what I hear you saying is you take what he got from the crop and you spread it back over the month from May to December. Am I hearing you right? Well, let me put it in these words, because I think they're the same words that you used in your previous opinion. And it is what is attempting to place that revenue in the context of what economic activity, what planting, what furrowing, what weeding, whatever takes place with respect to that product. Why is that different from what I said? I think it is the same as what you said, but I want to just say it in these words, because these are the words that occurred not only in your opinion, but in connection with Judge Barbier's opinion, matching the revenue with the economic activity that produced the revenue. That is a realistic, coherent, and consistent way of doing it, and it results in what the district court found everybody agreed to, is that similarly situated claimants would be treated in a similarly situated fashion, to the best possible way, given the comparative months and given a different way that books are kept. Now, my opponent keeps arguing about going back to the cash basis system. That is what was briefed, what was argued, and what was decided, and what you said produces inconsistent, incoherent results and treats people differently as a result of the happenstance of the way. Will you find in GAAP a method of accrual accounting that will confirm what you said and what I said, an acceptable method of accrual accounting? Both of the parties agreed, and I think I could be corrected, but both parties agree that GAAP isn't necessarily the answer to this because GAAP is created for contemporaneous financial results reporting. Now, but the principles. But would you agree that GAAP wouldn't recognize that as an acceptable form of accrual accounting? It depends upon, Your Honor, what your purpose is. If you have to give a report to the SEC or your stockholders or your investors or something with respect to the results for a particular financial period, there are certain rules that cover that. The purpose of this isn't that. It isn't contemporaneous financial accounting reporting purposes, and you acknowledge that in Deepwater Horizon 1. What we're trying to do here is retroactively look at the window for one period of time and then compare it with another period of time. But what I would say in response to that question is that the accounting principles, which you called general accounting and economic norms on page 337 of your opinion, you specifically said that the accrual framework applied to a different business and a different industry will produce something that's consistent with general accounting and economic norms. Some of that is imported into GAAP, but it's specifically applied here in a way to make sense. And what the remand was for. This Court — Let me ask you. These four specialized methods, depending on the industry, how is that system consistent with the settlement agreement saying that the criteria and compensation amount provisions will apply equally to all claimants? Doesn't that envision one method that treats whether you're a restaurant or a farmer or a lawyer the same? In this context, yes. Because the method, the accrual framework that you articulated and required to be applied unless there was evidence to the contrary. The claimants, you will recall, prior to this decision in October of 2013, said there's parole evidence that suggests that we intended that the people who kept their records on a cash accounting basis, those would be the records that would apply. You said we can't believe that the parties would agree to such an incoherent, irrational process, but if you have evidence, you have an opportunity to prove it. You call their bluff. They went back to the district judge and they had no such evidence. The district court specifically found there was no such evidence for that argument, and therefore there was no such evidence, no evidence that would support anything other than an accrual-type framework to the application. But then the question becomes what type of accrual framework, and it doesn't have to be this one that spreads the farmer's crops. I mean, it could just accrue in December and you match expenses when the harvest is. You'd have to match all the expenses. But to spread the revenues over the entire period the crops are grown, looking at the settlement agreement as a whole, how would someone expect that? It just seems to create a much more streamlined procedure based on the statements submitted. What is the alternative? The alternative, you can't. AVM. Well, that works in certain contexts, but what the claims administrator demonstrated and the district judge particularly analyzed, it doesn't always give you the answer which is consistent with what you were requiring, the accrual-based framework that would allocate revenue to the period of time where the effort caused it to be generated. So that's a realistic way of applying those systems. Accrual-based accounting is intended to be as realistic as possible with the actual economics. Those are the same words that are in your previous opinion with respect to, well, we have to have a system that treats people consistently and produces consistent results with respect to the best we can do given we have all kinds of different industries with books on a different basis. In the education world, the tuition money comes in before the student takes his classes. In the agriculture department, and it's not always the same, but this is generally the same. That was what the claims administrator was attempting to do to rationalize different industries that keep books and have expenses and receive revenues in slightly different ways. So let's try to generalize. Let's create a transparent, consistent process. Otherwise, you're going to have it one at a time. What everybody seemed to agree is that there should be similarly situated claimants should be treated similarly. And when you say the agriculture business generally receives funds after the crops are produced and the expenses are occurred before the crops are put in the ground and they're being developed. So let's apply that accrual-based system in a way that's consistent with economic reality, which is what you were stressing in your earlier opinion. On the other hand, the other industry, in the construction industry, the money may come in at the end. And so each of these four frameworks were intended to be transparent, to provide consistency. They're not final. The claims administrator may adjust them. And individuals may apply them differently. There are cases where the construction industry is receiving, and there are examples in the record, where the construction industry claimants were receiving more under this system than they would under the so-called cash-based system. Let me ask you this. What was the point of 4C's scheme to allow the claimant to pick as little as three months out of the year of the loss? I mean, I would assume it would be so he could pick the greatest loss that he had in that May to December period. I mean, it would make sense that most claimants would do that. So if you're going to spread revenue, what's the point of giving him three months to pick his claim? Well, I think that the evidence is probably not going to look – I mean, I don't know the evidence that would necessarily allow me to answer that question. But it allowed the flexibility to the claimant to pick a representative economic period and then compare it with a prior period, the period that was affected by the oil spill. But there was a lot of flexibility and a lot of choices there and a lot of bending in the direction of the claimants. But the one thing that was required is that they pick that period of time and then compare it with the other period of time and then use realistic – this is all through your opinion in the earlier case – a method of comparing the actual economic situation with what really happened and with consistency, and as you put it, the only realistic chance of compensating for real losses. Those are the exact words, in your opinion, on page 338. So that the – what is attempting – what you were attempting to articulate then in examining the record is that we have to have a process, an accounting process, that's realistic, that takes into account the effort that produces the income, the time when that effort took place, the costs that are associated with it, and do so in a consistent way. Now – But how do the losses in those three months have anything to do with the claimant's claim if you can move revenue back? What you're – this is accounting, and so you're accounting for the effort that produces the revenue with respect to those periods. If you're a farmer and you put in the crops in January or February or March, whenever it is, and the revenue comes in and then you're paid after that, it gave the claimants the opportunity to select a certain period of time, apples to apples and oranges to oranges, which is what you specifically said in the part of your opinion that dealt with this, is that this gave the opportunity to do that, but there has to be a consistent accounting mechanism. And what was done here, and what you clearly articulated in your previous opinion, that this is consistent with the documentation requirements. It treats similarly situated claimants with similar economic losses in a similar way. The key consideration was when revenue was earned, not necessarily when it was received. So what you were doing is articulating the only consistent system that would accurately reflect in different industries with different circumstances – we're talking about thousands and thousands of claimants – in a consistent way with consistent economic and accounting principles that would give you the best and verifiable result. Because – A lot of them here we're interpreting an agreement. Can you point to any text in the agreement that would support the notion of being able to move revenue? It's not, Your Honor, moving revenue. What I'm reading is the decision that you rendered as a result of the case that came down four or five years ago with respect to the reality of the way books are kept and the economic reality of where the activity that produced that revenue in connection – in conjunction with the expenses that were necessary to produce that revenue. You're identifying the expenses that need to be – that need to be corresponding – I hate to use that word because – to the revenues. Otherwise, there's no reality to trying to figure out what is the revenue, right? What is the profit? That's exactly right. What do you get for your settlement? You can't figure it out if you don't actually find the corresponding expenses and deduct it from the revenue. That's correct. And that is a very coherent system. Now, remember, we're talking about tens of thousands of claimants that are individually – How many are left? Pardon me? Opposing counsel was asked at the beginning. Do you know how many claims are still unprocessed? I understand. I don't know the exact number, but I understand that about 90 percent have been resolved. Now, I'm – my colleague will correct me if I'm wrong, but that's – I asked that question when I was preparing for this argument, that there are still a number out there. But – and some of them are waiting for the decision here. What – Is BP going to apply this policy if it's upheld backwards to people who got money under the cash basis to claw back? Are those – The cases that are over are over. And every effort is being made here to apply a consistent, coherent system. You used the phrase, in your previous opinion, on page 336, economic incoherence, to describe not matching, you know, when it is not done in the correct way, and how it would produce inconsistent results, artificially inflated or entirely fictitious losses. That's on page 338. And amounts on page 338 and 339 of your opinion, amounts completely disconnected from any reasonable understanding of calculation of damages. Those are the – that's the exact language. If you look at page – the pages that we're referring to here that discuss this subject, what you were prescribing – and I'm surprised that we're here several years later arguing about the same thing. This is – this was a system that you articulated that was consistent with accounting, regularity, reality, and would produce consistent results. And those are the same language, more consistent – this is on page 337 of your opinion – more consistent with general accounting and economic norms, and gives meaning to the words corresponding and variable, which is a part of the agreement, and results in numbers that could fairly represent actual economic losses or lost variable profits. That's on page 336. Net economic value during the period. That's also in your opinion, 336, 337. I read these words over and over again in anticipation of this argument. And it seems to me what you were doing conscientiously is to say we have – these are lots, thousands of businesses that keep their books in various different ways. We have to look at realistic accounting mechanisms to take into consideration the impact of this event and apply fair and consistent and reasonable and uniform standards as best as we can, given the way different people produce different records and keep their accounting records in the same way. So what we're talking about here is something that most closely approximates the best you can do with thousands and thousands of cases with people keeping their books in thousands and thousands of different ways and many of them completely imperfect. But this is your effort, as you prescribed it then, to approach reality and consistency and uniformity and accuracy. And that's the outcome that we believe is the only result that's both reasonable and fair and consistent with your prior decision. Thank you, Mr. Olson. We have your argument. Are the 17,600 claims outstanding, roughly? Are they dependent on the resolution of this appeal? There are a number that are awaiting appeal to this court that are being stayed. A big number or a little number? I don't know the answer to how many. I don't handle the individuals and class counsel doesn't handle the individual appeals. So I don't have that information at the ready, Your Honor. I'm sorry. I think it is striking that Mr. Olson not once quoted from the settlement agreement, not once referred to any provision of the settlement agreement, not once referred to even Exhibit 4C and to its actual provisions. And I think that instead what we heard was a claim that this court in Deepwater Horizon 1 remanded to the district court to start on a blank slate and figure out what was the best accounting mechanism that could be used in this circumstance, one that would perhaps get the best picture of economic reality as determined by the district court. I think that is error on two different levels. First of all, we are interpreting a settlement. We are not trying to start from scratch to determine what are the best mechanisms of compensating losses here. This was something that was negotiated between the parties under the Supreme Court's decisions in Evans v. Jeff Dee and the corresponding cases from this court. That's an authority the district court doesn't have. It cannot rewrite the settlement. But I think perhaps more central in this court is it misstates the holding of this court in Deepwater Horizon 1. In Deepwater Horizon 1, the court said two things that are absolutely critical. Number one, that there was ambiguity in the terms corresponding and variable as applied to the word expenses. And the second thing it said was that it would remand to the district court to take parole evidence that would clarify what corresponding and variable meant with regard to expenses. And this court gives a hypothetical of how to rewrite the language of the 4C in a way that would take out corresponding and variable from expenses and says that's improper because those words are there and under maritime law we give words, they're full meaning, we must give meaning to every word in a contract that we interpret. Well, here all of a sudden the word expenses is being taken out and revenue is being substituted in. And it's noteworthy for as many times as the term variable is used in Exhibit 4C and in 4D, it is never applied to revenue. And it makes no sense to apply it to revenue that way because it means that it would be in violation of how every single participant in farming and in these other activities understands their normal economic activity to take place. So the only basis for Mr. Olson's argument in defense of particularly the four specialty areas is that it was mandated by this court's opinion. There is nothing in Deepwater Horizon 1 which mandates different treatment of construction from agriculture. This is a fiction. This is a settlement agreement that we are interpreting here and that this court is obligated to give enforcement to and there is nothing in the settlement agreement that anticipates this. Again, I go back to the representation made when we were sent back to the district court in 2013 from this court's first opinion in Deepwater Horizon 1 and Mr. Godfrey says quite clearly to the court, accrual accounting is not required by the agreement, Your Honor. And there's two pieces of that that are critical. One is that accrual accounting is not required. Second, that at the time BP understood, as Mr. Olson himself said to this court several times, that it is a settlement that's being interpreted and one had to give effect to the language of the settlement itself. The argument that's being made today is identical, except for the reliance on Deepwater Horizon 1, is identical to what was made in Deepwater Horizon 3 with regard to 4B and it lost there. It is identical to the argument that BP made with regard to the non-profits and it lost there. This argument rewrites the settlement agreement and that's just not a power that the court should have or could have and the reband to take parole evidence gives no sustenance to that position. If there's no further questions, thank you very much, Your Honor. Thank you.